UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DWAYNE MASON,

                       Plaintiff,

        -against-                              13-cv-7139 (PKC)
                                              12-cv-5885 (PKC)

                                              MEMORANDUM
                                              <u>AND ORDER</u>

CITY OF NEW YORK, et al.,

                       Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Predecessor counsel, David Zelman, seeks to enforce by motion a charging lien against the proceeds of the settlement in this action. The motion is opposed by attorney Brett Klein whom, with Jason Leventhal, was counsel of record in this action. For reasons to be explained, Zelman's motion is granted as to a five (5) percent pro rata share of the attorney's fees collected out of the settlement, or $10,042.

BACKGROUND

        Plaintiff Dwayne Mason brought a section 1983 action against certain New York City Police Department ("NYPD") officers and the City of New York (the "City") alleging various constitutional violations. (Declaration of Brett Klein ("Klein Decl."), Ex. 1). Attorneys Brett Klein and Jason Leventhal, then of Leventhal & Klein, LLP, represented Mason in this lawsuit. (Klein Decl., ¶22). About a year and two months before the complaint in this action was filed, attorney David Zelman, the movant, filed a separate complaint on Mason's behalf arising from the same events: <u>Dwayne Mason v. Cortney Allen et al.</u>, 12 cv 5885 (PKC).

Zelman's present motion for a share of the attorney's fee in this action derives from his representation of Mason in that preceding lawsuit.

On July 11, 2012, various NYPD officers allegedly falsely arrested and beat plaintiff Dwayne Mason. (Declaration of Dwayne Mason ("Mason Decl."), ¶ 1). Shortly thereafter, Mason hired Zelman to represent him in an action against those officers. (Mason Decl. ¶1). Zelman was Mason's attorney for a total of ten days: from July 23, 2012 to August 1, 2012. (Mason Decl., ¶¶1, 9). During those ten days, Zelman had an initial consultation with Mason, which led to a signed contingency fee retainer agreement; he analyzed Mason's potential claims; he investigated some surrounding facts and attempted to obtain relevant records; he engaged an outside investigator; and, he drafted and filed a summons, complaint, and civil cover sheet in this Court on Mason's behalf. (Zelman Memorandum of Law in Support ("Zelman Memo."), 4-5).[1] Mason provided his own medical file, several documents relating to his criminal prosecution, and a video of the incident. (Zelman Memo., 4; Mason Decl., ¶ 3).

Mason maintains that "almost immediately after [he] hired Mr. Zelman, [he] began to have second thoughts about [Zelman's] ability to adequately represent [him]." (Mason Decl., ¶ 4). So much so that, around July 25, 2012, Mason spoke with Leventhal & Klein about changing representation and notified Zelman that he was looking for a new attorney. (Mason Decl., ¶¶ 5-6). According to Mason, Zelman "tried to convince [him] to stay with [Zelman] and asked [him] to give [Zelman] some more time." (Mason Decl., ¶ 7). Zelman has no recollection of Mason wanting new counsel and denies asking Mason for more time. (Zelman Affirmation in Reply ("Zelman Affm."), ¶ 5). On August 1, 2012, the same day that Zelman filed Mason's

---

[1] In an "Affirmation" submitted to the Court on May 11, 2016, Zelman declared, under penalty of perjury, that his description of the work he did as Mason's attorney, included on pages four and five of the Zelman Memorandum, were true and accurate to the best of his recollection.

complaint, Mason retained Leventhal & Klein as substitute counsel.  (Mason Decl., ¶¶ 8-9; Klein Decl., ¶ 16).

Jason Leventhal immediately faxed a letter to Zelman requesting that Zelman "stop all work on [Mason's] file and forward the fully executed Consent to Change Attorney [form] to [his] office together with the entire file and a list of [Zelman's] disbursements."  (Klein Decl., Ex. 4).  Leventhal's letter also acknowledged Zelman's "lien on [Leventhal & Klein's] file for attorney's fees performed for Mr. Mason on this matter."  (Klein Decl., Ex. 4).  Subsequently, Zelman and Klein exchanged several emails discussing Zelman's delivery of the file, his charging lien, and his disbursements; they did not, however, agree on Zelman's fee.  (Klein Decl., Ex. 5).  About a month later, Zelman and Leventhal sent a joint letter notifying the Court that they had resolved issues surrounding Zelman's withdrawal as Mason's attorney and that they "will attempt to resolve the issue of attorney compensation between themselves" at the conclusion of the matter.  (Klein Decl., Ex. 6).  On September 19, 2012, the Court approved Zelman's withdrawal in light of Leventhal & Klein's filed notice of appearance.  (12 cv 5885 (PKC), Dkt. 5).

Shortly after Leventhal & Klein took over Mason's case, they voluntarily dismissed the action without prejudice.  (Klein Decl., ¶ 18).  They then filed a notice of claim with the City and represented Mason at his New York Municipal Law §50-h hearing.  (Klein Decl., ¶¶ 19-20).  On October 8, 2013, they filed a new complaint on behalf of Mason, concerning the present action.  (Klein Decl., ¶ 22).  Over the next two years, Leventhal & Klein steered Mason's case through mediation, discovery, expert discovery, the beginnings of pretrial preparation, and a second round of mediation.  (Klein Decl., ¶¶ 23-41).  They ultimately settled

Mason's case for $625,000 leading the Court to dismiss Mason's suit with prejudice. (Klein Decl., ¶ 42; 13 cv 7139 (PKC) Dkt. 37).

After reimbursable litigation expenses of $22,479.88, Leventhal & Klein retained one-third of the settlement as attorney's fees, or $200,840.04, pursuant to the terms of a written retainer agreement with Mason. (Klein Decl., ¶¶ 43-44, Ex. 2). Once Zelman learned of the settlement, he filed the present motion seeking to enforce his charging lien against the settlement amount. Zelman has received no payment for his service as Mason's attorney, aside from $450 to cover his disbursements. (Zelman Affrm., ¶ 3; Klein Decl., Ex. 7). Pursuant to an order of the Court, Brett Klein is holding the $200,840.04 of attorney's fees in escrow pending the resolution of this fee dispute. (13 cv 7139 (PKC), Dkt. 49).

DISCUSSION

As an initial matter, the Court will exercise its ancillary jurisdiction to adjudicate the fee dispute between attorneys Zelman and Klein. See Chesley v. Union Carbide Corp., 927 F.2d 60, 64 (2d Cir. 1991); Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 445-49 (2d Cir. 1998). "Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003); see also Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir. 1988) (quoting Petition of Rosenman Colin Freund Lewis & Cohen, 600 F. Supp. 527, 531 (S.D.N.Y. 1984)) ("It is well settled that '[a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action.'"). The Court had subject-matter jurisdiction over Mason's underlying section 1983 claims pursuant to 28 U.S.C § 1331. The current dispute between Mason's two previous

attorneys over attorney's fees to be paid from the settlement proceeds is unquestionably related to Mason's underlying section 1983 action.  And, each of the applicable discretionary factors weigh in favor of exercising jurisdiction over the fee dispute: (1) the Court is familiar with the subject matter and the work of the attorneys; (2) it is the Court's responsibility to protect attorneys in fee disputes that arise before the Court; (3) it is most convenient for the parties to have the dispute adjudicated immediately by this Court; and, (4) judicial economy is promoted by keeping this ancillary matter with this Court.  See Levitt v. Brooks, 669 F.3d 100, 104 (2d Cir. 2012).[2]

       I.       Zelman's Charging Lien.

New Yok Judiciary Law § 475 "governs attorneys' charging liens in federal courts sitting in New York" and is enforceable "in accordance with its interpretation by New York courts."  Itar-Tass, 140 F.3d at 448-49.  It states:

> [f]rom the commencement of an action, special or other proceeding in any court . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.

N.Y. Judiciary Law § 475.  Pursuant to section 475, "an attorney dismissed without cause is entitled to liens in his favor to secure payment of reasonable fees and costs incurred prior to the date of substitution of counsel."  Sequa Corp. v. GBJ Corp., 156 F.3d 136, 147 (2d Cir. 1998).  However, "[d]espite the liberal interpretation afforded Section 475, the New York cases make clear that the charging lien provided for by Section 475 is for the benefit of an 'attorney of

---

[2] Neither party disputes the Court's jurisdiction to decide the fee dispute.

record' only." Itar-Tass, 140 F.3d at 450 (quoting Weinstein v. Seidmann, 173 A.D. 219, 220 (1st Dept. 1916)).

Because of his work as Mason's attorney in Dwayne Mason v. Cortney Allen et al., 12 cv 5885 (PKC), Zelman is entitled to a charging lien on the settlement proceeds in this action.  First, there is no dispute that Mason dismissed Zelman without cause.  And, second, Zelman was an "attorney of record" on Mason's prior lawsuit arising from the same events that underlie this action, i.e. the alleged false arrest and use of excessive force by police officers on July 11, 2012.

New York law is clear that "before an attorney can be granted a lien pursuant to Judiciary Law § 475 he or she must have appeared for the client by 'participating in a legal proceeding on the client's behalf or by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter.'"  Cataldo v. Budget Rent A Car Corp., 226 A.D.2d 574, 574 (2nd Dept. 1996) (citing Ebert v. New York City Health & Hosps. Corp., 210 A.D.2d 292, 292-93 (2nd Dept. 1994)); see Rodriguez v. City of New York, 66 N.Y.2d 825, 827-28 (1985).  It is undisputed that Zelman filed a complaint in this Court on behalf of Mason prior to being relieved.  This establishes that Zelman was an "attorney of record" in a legal proceeding on Mason's behalf.

In response, Klein argues that Zelman should not be considered an "attorney of record" because he was relieved as counsel on the same day he filed Mason's complaint.  That argument is inapposite.  The fact that Mason relieved Zelman on the same day Zelman filed the complaint does not destroy his status as "attorney of record."  See Itar-Tass, 140 F.3d at 451 (quoting Klein v. Eubank, 87 N.Y.2d 459, 462 (1996)) ("[A]n attorney's participation in the

proceeding at one point as counsel of record is a sufficient predicate for invoking the statute's protection.").

The fact that Zelman represented Mason on a different action also does not prohibit Zelman from enforcing a charging lien against the proceeds of the settlement in this case. According to New York law, "the attorney's lien attaches to the client's cause of action, and any recovery thereon, albeit the recovery is effected in an action other than the action in which the services were rendered." Neimark v. Martin, 7 A.D.2d 934, 934 (2nd Dept. 1959). "This is especially so where the recovery is in an action which is a logical sequence of a prior action in connection with which the services were rendered." Id. This action is one in "logical sequence" with the prior action on which Zelman was "attorney of record" because both lawsuits arise from the same events and allege nearly identical claims.[3]  See Id.

II.     Zelman's Fee Award.

Having determined that Zelman has a charging lien enforceable against the proceeds of the settlement in this action, the Court is left to calculate Zelman's share of the attorney's fees. Where, as here, a fee dispute is between two attorneys, "the outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit" or "the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case." Lai Ling, 73 N.Y.2d at 458. Leventhal & Klein did not agree to pay Zelman a set fee at the time he ended his representation of Mason. Instead, both parties agreed to resolve the issue of attorney

---

[3] Alternatively, even if Zelman was not an attorney of record and thus not eligible for a charging lien pursuant to section 475, he obtained an enforceable contractual lien from Leventhal & Klein when he turned over his file to Mason's new counsel. See Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 458-59 (1989). Zelman's contractual lien was recognized by Leventhal & Klein in a signed joint letter submitted to this Court. (Klein Decl., Ex. 4, 6).

compensation "[a]t the conclusion of the matter." (Klein Decl., Ex. 6). Under New York law, such an agreement is construed as providing the outgoing attorney, in this case Zelman, with payment as a percentage of any recovery based on his or her share of the work performed. See Lai Ling, 73 N.Y.2d at 459-60. In assessing the proportionate contributions of Zelman and Leventhal & Klein, the Court focuses "on the time and labor spent by each, the actual work performed [], the [] difficulty of the questions involved, the skill required to handle the matter, the attorney's skills and experience, [and] the effectiveness of counsel in bringing the matter to resolution." Buchta v. Union Endicott Cent. Sch. Dist., 296 A.D.2d 688, 689-90 (3rd Dept. 2002) (internal citations and quotations marks omitted).

Regarding the time, labor, and actual work performed by the attorneys, Zelman did comparatively little. Zelman was Mason's attorney for a total of ten days. (Mason Decl., ¶¶ 1, 9). During those ten days, Zelman greatest contribution was the drafting and filing of a summons and complaint. (Zelman Memo., 4-5). However, Leventhal & Klein voluntarily dismissed that complaint and filed a new action almost a year later because of issues regarding how Zelman proceeded. (Klein Decl., ¶¶ 19-22). For example, Zelman did not sue the City of New York, abandoned Mason's state law claims, and initiated the complaint while Mason's criminal charges were still pending. (Klein Decl., ¶ 22; Zelman Affrm., ¶¶ 7, 9). Leventhal & Klein, meanwhile, oversaw Mason's case for three years, engaged in discovery and mediation, and eventually achieved a settlement of $625,000. (Klein Decl., ¶¶ 23-42).[4]

Regarding the difficulty of the questions involved and skill required to handle the matter, Zelman's contributions were again comparatively minor. While Zelman drafted Mason's

---

[4] Zelman did not provide the Court with any documented accounting of the time he spent on Mason's case. Even when the Court asked if either party wanted to supplement the record prior to its determination of the motion, Zelman declined the Court's offer and did not provide any timesheets. (12 cv 5885 (PKC), Dkt. 16).

initial complaint, Mason's case, according to Zelman, "had all the hallmarks of a valuable and profitable civil rights matter with solid footing on all three necessary elements." (Zelman Affrm., ¶ 5). Zelman maintains that drafting any section 1983 complaint is a difficult task. However, his complaint totaled 11 pages, failed to introduce any novel theory of law, and had to be withdrawn by incoming counsel. (Klein Decl., ¶ 18; Ex. 3). In contrast, Leventhal & Klein represented Mason in a section 50-h hearing, filed a new complaint with many new claims, including <u>Monell</u> and various state law claims, took extensive fact and expert discovery lasting almost two years, and engaged in two mediation sessions. (Klein Decl., ¶¶ 23-41; Ex. 1). While Zelman did some work requiring legal skill and experience, the tasks taken up by Leventhal & Klein required and exhibited comparatively more skill and commitment.

Regarding the attorneys' skills and experience, each of the attorneys had experience representing plaintiffs in section 1983 actions. (Klein Decl., ¶¶ 2-15; Zelman Memo., 11-12). It is relevant to note, however, that Zelman admitted to using non-standard practices when handling Mason's case in order to accelerate the pace of litigation. (Zelman Affrm., ¶ 7). For example, he did not file a notice of claim and he initiated the case while Mason's criminal charges were still pending. (Zelman Affrm., ¶ 7; Mason Decl., ¶ 10). Klein contends that Zelman proceeded in this fashion to ensure he was listed as "attorney of record" in Mason's case. Zelman, on the other hand, argues that his decisions represented a strategy calculated to protect his client from possible impeachment and to reach a resolution quickly. Zelman's explanation does not satisfactorily explain why it was in plaintiff's interest to file the action during the pendency of Mason's criminal action. This factor weighs somewhat against Zelman.

Finally, regarding the effectiveness of counsel in reaching a resolution, the Court need only repeat that Zelman was Mason's attorney for ten days at the very onset of the litigation

while Leventhal & Klein took Mason's case from the time of Zelman's withdrawal in 2012 all the way through a successful six-figure settlement in 2015.

On balance, Leventhal & Klein's "proportionate share of the work performed on the whole case" was far greater than Zelman's.  Lai Ling, 73 N.Y.2d at 458.  While Zelman is entitled to some compensation for his work as Mason's attorney, his compensation, measured as a percentage of the resulting settlement, should be minimal.  In comparative cases, New York courts award outgoing attorney's similarly situated to Zelman five (5) percent of attorney's fees.  See, e.g., Buszko v. City of New York, 118 A.D.3d 464 (1st Dept. 2014) (awarding 5% fees to attorney that represented plaintiff for four months and "prepared and filed a bill of particulars, prepared and filed discovery demands and responses to defendants' discovery demands, obtained plaintiff's medical records, and retained two experts"); Shabazz v. City of New York, 94 A.D.3d 569 (1st Dept. 2012) (affirming award of 5% fees to outgoing attorney that "served the notices of claim on the municipal defendants, obtained plaintiff's medical records, represented him in a municipal 50-h hearing, and commenced the action by filing and serving a summons and complaint").  The Court concludes that fixing Zelman's charging lien at five (5) percent of the total attorney's fees obtained in this case is fair and reasonable under the circumstances.

CONCLUSION

Attorney David Zelman is awarded a five (5) percent pro rata share of the attorney's fees collected out of the settlement in this action, or $10,042.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 12, 2016